*1071 OPINION.
Lansdon:
The first contention of the petitioner is that the estate is entitled to deduct the amount of $11,837.05 from its income for the year 1922 as an ordinary and necessary business expense. To do this it must show that the payment in question was an expenditure incident to business operations, and that it was paid or incurred in the taxable year. The facts are that the petitioner’s decedent owned a 30½ per cent interest in certain stocks of the American Law Book Co., which, for purposes not disclosed by the record, were held by a group of men known as the American Law Book Company Syndicate. It may be assumed, we think, that such holdings represented a controlling interest in the Law Book Co., and that the syndicate was formed for the purpose of unifying the control thereof.
The record indicates that the American Law Book Co. was an exceedingly prosperous concern. The owners of its stocks very naturally desired the continuance of that prosperity and they decided in 1916 that one way to assure such a result was to make certain of the more able and responsible employees participants in any profits that might be earned as a result of their services. For this purpose the members of the syndicate entered into an agreement, subsequently modified in minor particulars, with certain employees of the Law Book Co. By the terms of that agreement such employees, at the end of a term at first fixed at 5 years and later extended to 6 years, were to have surrendered to them 10 per cent of the stock of the company, which was held by the syndicate, conditioned upon the payment of dividends equal to 500 per cent of outstanding stock within the 6-year period. This was an agreement well calculated to inspire the proposed beneficiaries with zeal, enthusiasm and industry in their work for the company. Before the employees could receive any benefit from the contract the company must within 6 years first distribute 5 times the par value of its outstanding stock to its shareholders. That condition doubtless served as a stimulus to the employees. At any rate the conditioned distributions were' made and 10 per cent of the stock held by the syndicate was delivered to the beneficiaries in 1922 at a cost to this petitioner of $11,837.05, which, it is contended, should be regarded as a business expense deductible from income for that year.
The distribution of dividends in the amount of 500 per cent of the par value of the Law Book Co.’s outstanding stock was completed in 1922. ■ In that year the liability of the petitioner to surrender stock of the value of $11,837.05 was incurred under the terms of the contract and in that year such liability was met by the surrender of 10 per cent of its stock. There is no doubt, therefore, that the liability in question was both incurred and paid in the taxable year. It remains, then, only to determine whether it was a *1072 business expense. The singlo basis for. the taxpayer’s contention is that at the time of the surrender of the stock the estate was a going business concern. That may be true, but we are unable to see that the surrender of tbe stock to the beneficiaries was incidental to any of the operations through which the estate earned income. It was not in the law-book-publishing business, except in its capacity as one of the joint owners of the stock held by the syndicate. Any additional profits of the American Law Book Co. that resulted from increased efficiency of the benefited employees was not the income of the petitioner. We are of the opinion that the surrender of the stock in question was a capital transaction designed permanently to increase the value of the stock remaining in the petitioner’s hands rather than an expense incidental to the production of income in the taxable year 1922.
The Northwestern Trust Co. was employed by the executors to act as their agent in conducting the business operations of the estate. The services rendered were many and varied. There is no showing that the compensation was unreasonable or that it was payment of purely administrative expenses and so deductible from corpus rather than from income. The books of the estate were kept on the cash basis. The amount of $5,000 paid to the Trust Company in 1923 is an allowable deduction from the income of the estate in that year for Federal tax purposes. Grace M. Knox et al., 3 B. T. A. 143. Cf. William W. Mead et al., Executors, 6 B. T. A. 752; H. Alfred Hansen, Executor, 6 B. T. A. 860; George W. Seligman, Executor, 10 B. T. A. 840.
The petitioner contends that the amounts paid to the widow for the maintenance of herself and children during the period of administration should be deducted from gross income of the estate in the two respective years in which such payments were made. Paragraph 3 of section 8726 of the Kevised Statutes of Minnesota provides as follows:
The widow or children or both, constituting the family of the decedent, shall have such reasonable allowances out of his personal estate as the probate court shall deem necessary for their maintenance during the settlement of the estate according to their circumstances, which in ease of an insolvent estate shall not be longer than one year after administration is granted, nor in any case after the distributive share of the widow in the residue of the personal estate has been assigned to her; and such reasonable allowance may be made by the court when the husband or father has left a will, as well as when he dies intestate.
It is obvious that tbe probate court authorized the payments to the widow in conformity with the statutory provision above. Throughout the time involved the estate was in process of administration, which was not completed until May 13, 1925. Although *1073 the will creates a trust and provides for the payment of a part of the income thereof to the widow of the testator, from the date of his death, it is clear that such trust was not effective until the estate was closed and the property delivered to the trustees. The payments in question, therefore, could not have been made from the income of a trust not yet effective, and as there were no testamentary provisions for such payments from the income of the estate at regular intervals or otherwise, we think it is clear that section 219 (a) of the Revenue Act of 1921 has no application to the situation here. The statute provides reasonable allowances for a widow out of the personal estate of the decedent. The probate court could act only in conformity with the law and, as the decree indicates, made no order that such payments should be from income. We conclude, therefore, that the amounts paid to the widow were distributions by the executors from the funds of the estate, that they were not such payments as are specified in subdivision (c) of section 219 of the Act, and that there is no authority for the deduction of such amounts from the. income thereof in the respective years.
Reviewed by the Board.

Decision will he entered under Rule 50.

Smith and Milliken dissent on the first and third points.
Phillips dissents on the first point.